**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES | |
| v. | No. 3:05-cr-118 (SRU)<br>No. 3:16-cv-1044 (SRU) |
| CRAIG HINES | |

## RULING ON SECTION 2255 AND FIRST STEP ACT MOTIONS

Craig Hines ("Hines"), a prisoner currently incarcerated at the United States Penitentiary Coleman II in Sumterville, Florida, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and also requests to be resentenced under the First Step Act. For the reasons that follow, I **deny** Hines's habeas petition and **grant** his First Step Act motion regarding his request for a resentencing.

**I.     Background**

On August 30, 2005, Hines pled guilty to each count of a three-count indictment charging: felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (count one), possession with intent to distribute five or more grams of cocaine base, *i.e.*, "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (count two), and possession, use, and carrying a firearm during, in relation to, and in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c)(1) (count three).[1] *See* Plea Agreement, Cr. Doc. No. 29; Min. Entry, Cr. Doc. No. 27.

On February 17, 2006, I sentenced Hines to 262 months' imprisonment on count one, 202 months' imprisonment on count two, and 60 months' imprisonment on count three. *See*

---

[1] I refer to documents in Hines's criminal case, *United States v. Hines*, No. 3:05-cr-118 (SRU), with the shorthand "Cr. Doc."

Judgment, Cr. Doc. No. 38. The sentences on counts two and three were to run consecutively, for a total of 262 months; and that combined sentence was to run concurrently with the 262 months on count one. *Id.* I also sentenced Hines to five years of supervised release on each count, all terms to run concurrently. *Id.*

At sentencing, in accordance with the plea agreement, the parties stipulated that Hines qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA") and as a career offender under the federal Sentencing Guidelines. Hines's predicate offenses were a 1995 state conviction for conspiracy to sell hallucinogens, a 1996 state conviction for third-degree robbery, and a 1997 state conviction for conspiracy to commit second-degree assault. *See* Plea Agreement, Cr. Doc. No. 29, at 5; Final PSR at ¶¶ 21–28. Because Hines "[was] determined to be a career offender" under the guidelines and was "convicted of [violating] 18 U.S.C. § 924(c)," U.S.S.G. § 4B1.1(c), he was subject to the higher of (a) the Guidelines range for Count Two (188 to 235 months of imprisonment) plus the mandatory minimum of 60 months on Count Three (a total of 248 to 295 months of imprisonment), or (b) the Guidelines range for Count Three (a total of 262 to 327 months of imprisonment). *See id.* at § 4B1.1(c)(2). The latter range was higher, so I concluded that Hines's advisory Guidelines range was 262 to 327 months of imprisonment, *see id.* at § 4B1.1(c)(3), and sentenced him to the bottom of that range. I did not discuss Hines's designation as an armed career criminal under ACCA. *See generally* Sentencing Hr'g Tr., Cr. Doc. No. 11-3.

Judgment entered on March 2, 2006. Cr. Doc. No. 38. Hines appealed, and the Second Circuit summarily affirmed. *See* Cr. Doc. No. 58.

## II. Section 2255 Motion to Vacate, Set Aside, or Correct Sentence

### a. Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his sentence. To obtain relief under section 2255, the petitioner must show that his prior sentence was invalid because the sentence: (1) was "imposed in violation of the Constitution or laws of the United States"; (2) was imposed "without jurisdiction" by the sentencing court; (3) was "in excess of the maximum authorized by law"; or (4) is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The standard is a high one; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in actual prejudice to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).

A section 2255 petition "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). That limitation prohibits relitigation of issues that were expressly or impliedly decided on direct appeal. *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). A court may only reconsider an earlier decision if it is "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Furthermore, a section 2255 petition is "not a substitute for direct appeal." *Harrington v.*

*United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir. 2007)). A court will not review claims that the petitioner failed to properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence . . . ." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In the context of a habeas petition, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (internal quotations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court is not required to accept the petitioner's factual assertions as credible "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2009). Section 2255 also requires that the district court hold a hearing on the petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001). But "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim." *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "[I]f it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition]." *Puglisi*, 586 F.3d at 213.

   b. **Eligibility for Relief**

Hines asserts that his sentence was unconstitutionally enhanced under the Residual Clause of ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), and that he is entitled to resentencing pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). I agree that Hines was improperly

4

characterized as an armed career criminal under ACCA, but I conclude that the error was harmless. Hines received two concurrent sentences that, together, equal the length of his sentence under ACCA, and neither of those sentences may be challenged under *Johnson*. In addition, when sentencing Hines, I did not rely upon his purported status as an armed career criminal under ACCA.

As noted above, Hines received separate sentences on each count of a three-count indictment: 262 months on Count One (for violation of 18 U.S.C. §§ 922(g)(1) & 924(e)), 202 months on Count Two (for violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)), and 60 months on Count Three (for violation of 18 U.S.C. § 924(c)(1)). Hines's sentence on Count Two ran concurrently with his sentence on Count One; his sentence on Count Three ran consecutively to his sentence on Count Two and concurrently with his sentence on Count One. *Johnson*, which provides the legal basis for Hines's petition, invalidated only the sentence on Count One (the ACCA count). The penalties for Counts Two and Three were not affected by ACCA, and Hines's sentences on those counts were not rendered suspect by *Johnson*.

Furthermore, Hines's advisory range under the Sentencing Guidelines—which dominated my discussion at the sentencing hearing, *see* Sentencing Hr'g Tr., Doc. No. 11-3—was not impacted by his armed career criminal designation under ACCA. Hines's Guidelines range was enhanced not because of his designation under ACCA, but because he was a career offender under the Guidelines who "ha[d] at least two prior felony convictions of either a crime of violence or a controlled substance offense." *See* U.S.S.G. § 4B1.1(a). Because Hines was "convicted of [violating] 18 U.S.C. § 924(c) . . . and [was] determined to be a career offender," *id.* at § 4B1.1(c), he was subject to a higher Guidelines range of 262 to 327 months of imprisonment. *See id.* at § 4B1.1(c)(2)(3). Hence, with respect to the Sentencing Guidelines

range, his armed career criminal designation under ACCA never entered the picture: Hines's advisory range was increased solely due to the Guidelines' career offender provision.

I emphasize that *Johnson* did not affect Hines's designation as a career offender under the Guidelines because "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." *Beckles v. United States*, 137 S. Ct. 886, 890 (2017). At the time of sentencing, Hines qualified as a career offender under the Guidelines on the basis of at least two prior convictions: one in 1996 for third-degree robbery in violation of Conn. Gen. Stat. § 53a-136,[2] and another in 1997 for conspiracy to commit second-degree assault in violation of Conn. Gen. Stat. § 53a-48.[3] The 1996 conviction qualifies as a predicate offense under the Elements Clause of the career offender guideline. As other judges of this court have determined, third-degree robbery is "categorically a violent felony" because "an essential element of th[e] offense is the use or threatened use of physical force upon another person." *Carter v. United States*, 731 F. Supp. 2d 262, 273 (D. Conn. 2010); *see Gomez v. Ashcroft*, 293 F. Supp. 2d 162, 166 (D. Conn. 2003); *cf.* Conn. Gen. Stat. § 53a-133 (defining robbery to require the defendant to have "use[d] or threaten[ed] the immediate use of physical force"). Thus, third-degree robbery remains a "violent felony" or "crime of violence" under the Guidelines' Elements Clause, and

---

[2] Conn. Gen. Stat. § 53a-136(a) provides: "A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133." Section 53a-133, in turn, provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] Conn. Gen. Stat. § 53a-48 provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." The underlying crime of assault in the second degree is codified at Conn. Gen. Stat. § 53a-60(a).

Hines's 1996 conviction serves as a predicate offense for the application of the career offender guideline.[4]

Hines's 1997 conviction does not clearly qualify as a predicate offense under the Elements Clause of the career offender guideline. Although the underlying crime that Hines was convicted of conspiring to commit—assault in the second degree—appears to "ha[ve] as an element the use, attempted use, or threatened use of physical force,"[5] *see Johnson*, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)(i)); *see also* U.S.S.G. § 4B1.2(a)(2) (observing that "'[c]rime of violence' includes . . . aggravated assault"), I have ruled that "conspiracy to commit an offense does not qualify as a violent felony simply because the underlying offense, if completed, would require the use of physical force against another person." *Wiggan v. United*

---

[4] Hines was a minor at the time of his 1996 conviction, but that offense may be counted because he was "convicted as an adult and received a sentence of imprisonment exceeding one year and one month." *See* U.S.S.G. § 4A1.2(d)(1). Hines must have been convicted as an adult because he was sentenced to eight years of incarceration, well above the four-year maximum authorized for "youthful offenders" in Connecticut. *See* Conn. Gen. Stat. § 54-76j(a); *cf.* Conn. Gen. Stat. § 46b-140(b) (not authorizing any term of incarceration as punishment for a juvenile delinquent).

[5] Conn. Gen. Stat. § 53a-60(a) is a "divisible" statute, i.e., it is divided into a number of subsections, each one of which constitutes an "alternative version[] of the crime." *See Descamps v. United States*, 570 U.S. 254, 262 (2013). Ordinarily, such a statute would be analyzed under the Supreme Court's "modified categorical approach," which allows courts to "examine a limited class of documents" in order to "determine which of [the] statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* In this case, however, I need not apply the modified categorical approach: nearly all of section 53a-60(a)'s subsections expressly require that the defendant have intentionally "cause[d]" some form of "physical injury" to another person, and the Supreme Court has held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *See United States v. Castleman*, 572 U.S. 157, 169 (2013). Only subsection (3) criminalizes "reckless" conduct, and that subsection requires the defendant to have "cause[d] serious physical injury to another person by means of a deadly weapon or a dangerous instrument," Conn. Gen. Stat. § 53a-60(a)(3), which also would "necessarily involve[] the use of physical force." *See Castleman*, 572 U.S. at 169.
   I note that *Castleman* "abrogated" the "understanding of the use of force" reflected in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), which held that *third*-degree assault was not a "crime of violence" under Connecticut law because "the intentional causation of injury does not necessarily involve the use of force." *Id.* at 195–96; *see Villanueva v. United States*, 893 F. 3d 123, 130 (discussing *Castleman*'s impact on *Chrzanoski*). Whereas *Chrzanoski* reasoned that "even second[-]degree assault . . . can be committed without any physical force," *see* 327 F.3d at 195–96—like when "a doctor . . . deliberately withholds vital medicine from a sick patient," *id.* (citing *State v. Nunes*, 260 Conn. 649 (2002))—*Castleman* "made clear that physical force 'encompasses even its indirect application,' as when a battery is committed by administering a poison." *United States v. Hill*, 890 F.3d 51, 59 (2d Cir. 2018) (quoting *Castleman*, 134 S. Ct. at 1414–15). Because "a use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly," *Hill*, 890 F.3d at 60, *Castleman* makes clear that all of the subsections of Connecticut's second-degree assault statute "ha[ve] as an element the use, attempted use, or threatened use of physical force." *See Johnson v. United States*, 135 S. Ct. 2551, 2555 (2015).

7

*States*, 2016 WL 4179838, at *15 (D. Conn. Aug. 5, 2016). That is so because, to convict on a conspiracy charge, "[a] jury need only find that the defendant 'intended to bring about the elements of the conspired offense,'" *id.* (quoting *State v. Padua*, 273 Conn. 138, 166 (2005)), and mere "'[i]ntent' to use physical force does not amount to the actual use, threatened, or attempted use of physical force." *Id.*; *see also United States v. Alfonso*, 2019 WL 1916199, at *3 (D. Conn. Apr. 30, 2019) ("conspiracy to commit robbery in violation of Conn. Gen. Stat. § 53a-48(a) is not a crime of violence under the Elements Clause [of the career offender guideline] because it does not have as an element the use, attempted use, or threatened use of physical force.").

Thus, conspiracy to commit second-degree assault does not qualify as a "violent felony" under the Guidelines' Elements Clause and could not, after *Johnson*, serve as a predicate offense for an armed career criminal designation under ACCA.

At the time of Hines's sentencing, conspiracy to commit second-degree assault qualified as a "crime of violence" under the Guidelines' Residual Clause because it "involve[d] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). As the Second Circuit has observed, "[a] conspiracy, by its very nature, . . . enhances the likelihood that the planned crime will be carried out." *United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996) (per curiam) (quoting *United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992)). Thus, "when a conspiracy exists to commit a crime of violence," such as second-degree assault, "the conspiracy itself poses a 'substantial risk' of violence, which qualifies it . . . as a crime of violence" under the Guidelines' Residual Clause. *See id.*

Since the time of Hines's sentencing, the United States Sentencing Commission has amended the Guidelines to conform with the Supreme Court's ruling in *Johnson*. In 2016, the

Sentencing Commission amended section 4B1.2(a) by striking the Residual Clause. *See* U.S.S.G. § 4B1.2(a)(2).[6] As a result, a defendant sentenced today can no longer be designated as a career offender under the Guidelines based on one or more prior felony convictions that involved "conduct presenting a serious potential risk of physical injury to another." *See id*.

Hines, however, was sentenced in 2006 when the Guidelines' career offender Residual Clause remained in effect. Furthermore, even though the Supreme Court struck down ACCA's Residual Clause as unconstitutionally vague in *Johnson*, the Court has expressly held that the corresponding provision of the Sentencing Guidelines is "not void for vagueness." *Beckles*, 137 S. Ct. at 895. Accordingly, Hines's 1997 conviction still served as a predicate offense for his career offender status under the Guidelines' Residual Clause when he was sentenced. Because Hines had "two prior felony convictions of . . . a crime of violence" after *Johnson*, *see* U.S.S.G. § 4B1.1(a), he qualified as a career offender under the Guidelines regardless of whether the government could obtain a higher statutory sentencing range under ACCA or a higher Guidelines range under the armed career criminal provision of the Guidelines.

Finally, the record makes clear that when sentencing Hines, I relied upon his Guideline range rather than his status as an armed career criminal under ACCA. At sentencing, I noted that Hines's range under the Guidelines was "even longer than" his 15-year mandatory minimum

---

[6] "Section 4B1.2(a) is amended by striking paragraph (2) as follows:

'(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another,'

and inserting the following:

'(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. [§] 5845(a) or explosive material as defined in 18 U.S.C. [§] 841(c).'"

U.S.S.G. § 4B1.2 (amended 2016).

9

pursuant to ACCA's Residual Clause. Sentencing Hr'g Tr., Doc. No. 11-3, at 20–21, and I expressly stated that a sentence within Hines's Guidelines range was "correct" and "appropriate." *See id.* at 22, 25. Ultimately, I sentenced Hines to a term of incarceration that fell at the very bottom of the Guidelines range (262 months), but well above his 15-year mandatory minimum under ACCA. Nothing in the record suggests that I "felt constrained by the statute and might [have] impose[d] a lesser sentence" without ACCA. *Cf. United States v. Feldman*, 647 F.3d 450, 459 (2d Cir. 2011). Instead, I unambiguously indicated that I "would have imposed the same sentence" irrespective of whether the government sought the statutory sentencing range under ACCA. *See United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014) (per curiam); *Feldman*, 647 F.3d at 459. Simply put, the erroneous ACCA designation "did not affect" Hines's sentence. *See United States v. Outen*, 286 F.3d 622, 640 (2d Cir. 2002).

Hines's two concurrent sentences are not subject to a *Johnson* challenge, and in sentencing him on those counts, I did not rely on his armed career criminal designation under ACCA. Because the ACCA error "caused no prejudice," *Underwood*, 166 F.3d at 87, Hines is "not entitled to habeas relief."[7] *Brecht*, 507 U.S. at 637. Therefore, I **deny** his section 255 petition.

---

[7] Hines argues that harmless error analysis cannot be applied here because, as I held in *Shabazz v. United States*, 2017 WL 27394, at *1 (D. Conn. Jan. 3, 2017), a "*Johnson* error is a structural error not amenable to harmless error review." The government correctly responds that *Shabazz* is inapposite. In *Shabazz*, the defendant was convicted and sentenced under ACCA on a single count. I held that I could not retrospectively decide whether Shabazz's prior offenses qualified as "violent felonies" under ACCA's Elements Clause, "because invalidation of the Residual Clause 'affect[s] the entire framework in which an ACCA finding proceeds.'" *Id.* at *8 (quoting *Villanueva v. United States*, 191 F. Supp. 3d 178, 190 (D. Conn. 2016), *rev'd on other grounds*, __ F.3d __, 2018 WL 3077064 (2d Cir. 2018)). In the present case, consistent with *Shabazz*, I do not consider whether Hines's ACCA conviction can be salvaged under the Elements Clause. Rather, I hold that the erroneous ACCA enhancement is harmless because Hines also was convicted and sentenced on two unrelated counts.

### III. First Step Act Motion

Hines seeks relief pursuant to the recently passed First Step Act, requesting an immediate release or, in the alternative, a prompt resentencing on his three counts of conviction from 2006: felon in possession of a firearm (count one), possession with intent to distribute five or more grams of cocaine base, *i.e.*, "crack cocaine" (count two), and possession, use, and carrying a firearm during, in relation to, and in furtherance of a drug offense (count three). *See* First Step Act Motion ("FSA Mot."), Cr. Doc. No. 63. The government opposes the motion on the basis that Hines is not entitled to a resentencing on counts one and three, which are not covered offenses. *See* Opp'n to FSA Mot., Cr. Doc. No. 67. Further, the government argues that, in my discretion, I should refuse to reduce Hines's sentence anyway because of the nature of this crime. *Id.* For the following reasons, Hines's motion is **granted** insofar as he requests a resentencing.

#### A. Eligibility for Relief

Following Hines's sentencing, Congress passed the Fair Sentencing Act of 2010, Pub. Law 111-220, 124 Stat. 2372 ("Fair Sentencing Act"), which "'reduced the statutory penalties for cocaine base[] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" *United States v. Sampson*, 360 F. Supp. 3d 168, 169 (W.D.N.Y. 2019) (quoting *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016)). In 2018, Congress passed, and the President signed into law, the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). Section 404 of the First Step Act made retroactive some provisions of the Fair Sentencing Act. First Step Act § 404(b). First Step Act relief is available to those convicted of a "covered offense," which Section 404 defines as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." First Step Act § 404(a).

11

At the time of Hines's sentencing, pre-Fair Sentencing Act, cases involving five grams or more of crack cocaine fell under 21 U.S.C. § 841(b)(1)(B) and carried a mandatory minimum penalty of five years' incarceration and a maximum of 40 years' incarceration. *See United States v. Rivera*, 170 F. App'x 209, 210 (2d Cir. 2006). Section two of the Fair Sentencing Act changed the statutory section and penalties for cases involving five grams or more of crack cocaine; that quantity of crack cocaine now falls under 21 U.S.C. § 841(b)(1)(C) and carries no mandatory minimum penalty and a statutory maximum penalty of twenty years' incarceration. *See* Fair Sentencing Act § 2. Accordingly, because the Fair Sentencing Act modified the penalties for a crime involving five grams or more of crack cocaine, that crime, if committed before August 3, 2010, is a "covered offense" for purposes of the First Step Act. *See* First Step Act § 404(b). The government also concludes that Hines's conviction on count two is a covered offense. *See* PSR Addendum, Cr. Doc. No. 64 at 2; Opp'n to FSA Mot., Cr. Doc. No. 67, at 9. Thus, there is no question that under the First Step Act, Hines is eligible for relief on count two. The only remaining question is whether he is eligible for resentencing on counts one and three.

**B. Scope of Relief**

In other First Step Act cases before me, defendants who were convicted of one covered offense and one or more other offenses have argued for plenary resentencing on all counts. *See, e.g.*, *United States v. Felix DeJesus*, 2019 WL 5997336, at *1 (D. Conn. Nov. 1, 2019). I have granted those requests because, in my view, a defendant who is entitled to relief under the First Step Act for a covered offense is also entitled to a full resentencing on related convictions. *See id.*; *see also United States v. Medina*, 2019 WL 3769598 (D. Conn. July 17, 2019). But Hines does not really argue for a plenary resentencing here. Instead, Hines seeks to "set[] aside the issue of whether [he] would be entitled to plenary resentencing or a limited resentencing" and

simply asserts that he is entitled to a resentencing on count two. *See* Def.'s Response to PSA Addendum, Doc. No. 66. Hines argues instead that under section 2255, described *supra* in Part I, he is entitled to a resentencing on count one and that his new guidelines range on that count—should I find that he is no longer an armed career criminal under ACCA—would drop drastically from 262-327 months to 37-46 months. *See* Response to PSR Addendum, Doc. No. 66. Had those been the guidelines when I sentenced Hines back in 2006, Hines argues, I very likely would have given him a lesser sentence on count two, too. However, as explained above, Hines is *not* entitled to a resentencing on count one. Thus, Hines's reliance on his section 2255 motion is misplaced.

Despite that misplaced reliance, Hines is still entitled to a plenary resentencing because I hold that the First Step Act authorizes me, when a defendant is entitled to relief for a covered offense, to conduct a plenary resentencing. I have recently set forth comprehensively the reasons for that conclusion in *United States v. Luna*, __ F. Supp. 3d __, 2020 WL 464778 (D. Conn. Jan. 29, 2020). Those reasons apply equally here.

### IV. Conclusion

For the foregoing reasons, Hines's section 2255 motion to vacate his sentence is **denied**. Hines's First Step Act motion is **granted**, and Hines is entitled to a plenary resentencing. The clerk shall schedule a prompt resentencing.

So ordered.

Dated at Bridgeport, Connecticut, this 7th day of February 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge